UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEON MCNEIL WILKINS,<br><br>    Plaintiff,<br><br>    v.<br><br>SANTA CLARA SHERIFFS DEPARTMENT, et al.,<br><br>    Defendants. | Case No. 20-cv-03256-EMC<br><br>**ORDER DISMISSING AMENDED COMPLAINT WITH LEAVE TO AMEND** |

## I. INTRODUCTION

Deon McNeil Wilkins, an inmate at the Santa Clara County Jail, filed this *pro se* civil rights action under 42 U.S.C. § 1983. Mr. Wilkins's original complaint was reviewed by the Court pursuant to 28 U.S.C. § 1915A, and dismissed with leave to amend. *See* Docket No. 6. After Mr. Wilkins filed an amended complaint ("FAC"), a Court order was returned as undeliverable. *See* Docket Nos. 9, 10. The Court then dismissed the instant action for failure to comply with Local Rule 3-11(a). *See* Docket No. 10.

Mr. Wilkins subsequently moved to reopen this action, which request the Court granted. *See* Docket No. 24. Mr. Wilkins's FAC is now before the court for review under 28 U.S.C. § 1915A. This order requires Mr. Wilkins to file a second amended complaint ("SAC") to correct several pleading deficiencies.

## II. BACKGROUND

Mr. Wilkins alleges that, on April 17, 2020, he was assaulted by deputies and a sergeant from the Santa Clara County Sheriff's Department at the Santa Clara County Main Jail. Mr. Wilkins alleges that officers "repeatedly shot [him] in the face with the air rifle and punched,

1   kicked, choked, and slammed [his] head against the floor until [he] lost consciousness [] leaving
2   [him] with a broken arm, several fractures in [his] left arm, chipped teeth, bruised ribs and
3   abrasions . . . ." FAC at 1-2.  Mr. Wilkins contends that this use of force occurred although he
4   "laid on the floor as these officers instructed" and "did everything in compliance with their
5   orders."  *Id*. at 2.  Santa Clara County Sheriff's deputies Varphal, Jones, Stokes, Frazier, Dunlap,
6   Karlay, Zenuk, Oliveri, Peña, Caldwell, and Bazan, and sergeants Morales and Boles, allegedly
7   took part in this use of force against Mr. Wilkins.  *See id*. at 1.  Although Mr. Wilkins specifically
8   represented that this incident occurred at the Santa Clara County Main Jail, Mr. Wilkins also
9   claims that two Valley Medical Center security guards, deputies Amador and Uche, participated in
10  the use of excessive force.  *See id*. at 6.

11  Mr. Wilkins contends that the Santa Clara County Main Jail's "policy is to hold pretrial
12  detainees free of all state-created dangers and uses of excessive force," and that "th[is] polic[y]
13  w[as] violated by these actors . . . ." *Id*. at 6.  However, in contradiction of this allegation, Mr.
14  Wilkins also contends that the Santa Clara County Main Jail's "policy amounts to deliberate
15  indifference to [his] constitutional rights," and was "the moving force behind the constitutional
16  violation."  *Id*. at 7.

17  Mr. Wilkins further alleges that, after the incident, he was not given medical attention for
18  16 hours.  *See id*. at 5.  At that time, doctors x-rayed Mr. Wilkins's arm and discovered multiple
19  fractures.  *See id*.  Although Mr. Wilkins complained of damage to his teeth and pain in his ribs at
20  that time, he "was never treated or x-rayed for either of these . . . issues."  *Id*.  Mr. Wilkins
21  represents that the medical staff refused to give him their names.  *See id*.

22  Mr. Wilkins alleges that deputies pepper-sprayed him directly in the eyes "on different
23  occasions," which permanently damaged his vision.  *Id*. at 4.

### III. DISCUSSION

25  A federal court must engage in a preliminary screening of any case in which a prisoner
26  seeks redress from a governmental entity or officer or employee of a governmental entity.  *See* 28
27  U.S.C. § 1915A(a).  In its review the court must identify any cognizable claims, and dismiss any
28  claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or

seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b)(1),(2). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

A.  <u>April 17, 2020 Force Incident</u>

The Due Process Clause of the Fourteenth Amendment protects a pretrial detainee from the use of excessive force that amounts to punishment. *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-39 (1979)). To prove an excessive force claim under § 1983, a pretrial detainee must show only that the "force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.*

Liberally construed, the complaint states a cognizable excessive force claim against Santa Clara County Sheriff's deputies Varphal, Jones, Stokes, Frazier, Dunlap, Karlay, Zenuk, Oliveri, Peña, Caldwell, and Bazan, and sergeants Morales and Boles, who allegedly participated in beating up Mr. Wilkins on April 17, 2020. *See* FAC at 1.

Mr. Wilkins has not stated a claim against deputies Amador and Uche. The FAC contains the contradictory allegations that these two deputies are employed by Valley Medical Center and that they were present during the April 17, 2020 attack on Mr. Wilkins at the Santa Clara County Main Jail. *See id.* at 6. Mr. Wilkins does not explain how deputies Amador and Uche can be employed by Valley Medical Center, yet be present and partly responsible for an attack that occurred at a different location.

These Defendants are dismissed. If Mr. Wilkins chooses to file an SAC with new allegations, he must explain his contradictory allegations, and also explain how these two deputies participated in the April 17, 2020 attack.

3

### B. April 18, 2020 Medical Care

The elements of a pretrial detainee's medical care claim under the Due Process Clause are: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *See Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). For the third element, the defendant's conduct must be objectively unreasonable, "a test that will necessarily 'turn[] on the facts and circumstances of each particular case.'" *Id.* (alteration in original) (quoting *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016)). "[T]he plaintiff must 'prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* (quoting *Castro*, 833 F.3d at 1071). Under this test, there is no separate inquiry into an officer's subjective state of mind. *See id.* at 1125 n.4.

More information is needed about Mr. Wilkins's medical care claims. Mr. Wilkins alleges that he was not given medical care for 16 hours, but does not state who was at fault for this delay. *See* FAC at 5. For example, it is impossible to discern from the FAC whether this delay in care occurred because a doctor or nurse refused to treat Mr. Wilkins, or whether it occurred because custodial staff failed to transport Mr. Wilkins to a medical facility. Likewise, Mr. Wilkins states that he "complained about other issues," such as damage to his teeth and ribs, but does not identify the person to whom he reported those injuries. *See id*. Again, were these complaints made to deputies or to medical staff? Without such information, the Court cannot be sure that Mr. Wilkins is suing the correct person(s).

If Mr. Wilkins wishes to sue individual persons, he must link individual defendants to his claims by alleging facts showing the basis for liability for each individual defendant. He should not refer to them as a group (e.g., "the defendants" or "the medical staff"); rather, he should identify each involved defendant by name and link each of them to his claims by explaining what each defendant did or failed to do that caused a violation of his constitutional rights. *See Leer v.*

4

*Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (liability may be imposed on individual defendant under § 1983 only if plaintiff can show that defendant proximately caused deprivation of federally protected right).

Defendants whose names are unknown may be sued as John Doe and Jane Doe defendants. If there are multiple unknown persons, they should be numbered, such as John Doe # 1, John Doe # 2, etc., so that each Doe defendant corresponds with a specific person. The use of "John Doe" or "Jane Doe" to identify a defendant is not favored in the Ninth Circuit, *see Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980), but sometimes is necessary when a plaintiff cannot discover the identity of the defendant before filing the complaint. Although the use of a John Doe or Jane Doe defendant designation is acceptable to withstand dismissal of a complaint at the initial review stage, using a John Doe or Jane Doe defendant designation creates its own problem: that person cannot be served with process until he or she is identified by his or her true name. The burden remains on the plaintiff to identify the defendant; the Court will not undertake to investigate the name and identity of an unnamed defendant.

The Court will provide an extended length of time for Mr. Wilkins to file his amended complaint so that he will have the time to try to learn the name of the person(s) who allegedly violated his rights. It is expected that his amended complaint will contain the true names of the individuals, if at all possible, rather than referring to them as Doe Defendants. If Mr. Wilkins files an amended complaint using John Doe or Jane Doe designations (rather than providing the true names of those individuals), he must at that same time inform the Court of each and every step he took to try to learn the name of each of those Doe defendants.

C. <u>Pepper Spray Incidents</u>

Mr. Wilkins contends that he has been "repeatedly subjected to continuing incidents of excessive uses of force by means of direct spraying of pepper spray in [his] eyes" by deputies Varphal, Oliveri, and Jones. FAC at 4. Mr. Wilkins implies that one pepper-spraying incident immediately preceded the April 17, 2020 attack, and another incident appears to have occurred on October 16, 2020. *See id*. Mr. Wilkins does not identify any other incidents.

More information is needed regarding these incidents. As to the pepper-spraying incident

which may have occurred on April 17, 2020, Mr. Wilkins must expressly state whether this incident occurred on that date, and explain how it relates to the attack which occurred on that date.

As to the October 16, 2020 incident, Mr. Wilkins must provide more information regarding what happened, and who is responsible. As the allegations stand, it is unclear whether this incident was properly included in this action. "A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Accordingly, "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). "Unrelated claims against different defendants belong in different suits." *Id.* Here, the October 16, 2020 incident, and any other pepper-spraying incidents, may only properly be included in this action if they were perpetrated by Defendants who also attacked Mr. Wilkins on April 17, 2020.

D.   References to State-Created Danger

Mr. Wilkins makes repeated references to having faced a "state created danger." *See* FAC, *passim*. The "state-created danger" rule is an exception on which Mr. Wilkins does not need to rely. It applies when a state actor did not directly cause harm to a plaintiff, but rather put the plaintiff in a situation where he obviously would be harmed by private actors. *See Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971–72 (9th Cir. 2011) (explaining that, although a state generally "is not liable for its omissions," the state-created danger rule provide an exception "when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger'").[1]

Here, Mr. Wilkins does not allege inaction by state actors. Rather, he alleges that state actors directly inflicted harm upon him. *See generally*, FAC. The state-created danger exception thus is unnecessary, and does not apply, here.

---

[1] *See also, e.g., Henry A. v. Willden*, 678 F.3d 991, 1002–03 (9th Cir. 2012) (state actors potentially liable under state-created danger doctrine where they placed children into foster homes where there was a known danger of abuse and neglect); *Munger v. City of Glasgow*, 227 F.3d 1082, 1086 (9th Cir. 2000) (no qualified immunity for officers who ejected plaintiff from a bar and left him to walk home in subfreezing temperatures when he was drunk and only wearing a t-shirt and jeans and plaintiff developed hypothermia).

6

## IV.     CONCLUSION

The complaint is dismissed with leave to amend. Plaintiff must file a second amended complaint ("SAC") that complies with the directions in this order no later than **September 2, 2022**, and must include the caption and civil case number used in this order and the words SECOND AMENDED COMPLAINT on the first page. Plaintiff is cautioned that his SAC must be a complete statement of his claims, except that he may not repeat claims the Court has dismissed without leave to amend and may not repeat allegations against defendants the Court has dismissed from this action. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) ("For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal. But for any claims voluntarily dismissed, we will consider those claims to be waived if not repled.") Thus, if Mr. Wilkins files an SAC, he must allege his medical care claim *and* his excessive force claim(s).

If Mr. Wilkins does not file an SAC by the deadline, his medical care claim and his excessive force claims related to pepper-spraying will be dismissed and the case will move forward with just the excessive force claim for the April 17, 2020 attack.

**IT IS SO ORDERED**.

Dated: July 20, 2022

_____
EDWARD M. CHEN
United States District Judge